### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CRIMINAL ACTION** |
| | : | **NO. 05-CR-0056-16** |
| | : | |
| **vs.** | : | |
| | : | **CIVIL ACTION** |
| **THEODORE YOUNG, SR.,** | : | **NO. 10-CV-3465** |

### M E M O R A N D U M

**STENGEL, J.**                                              **September  12  , 2011**

On May 3, 2007, after a month-long trial, a jury convicted Theodore Young, Sr., of

three drug-related charges related to his involvement with his son and several others in

what became known by the government as the "Young Heroin Organization." The Third

Circuit Court of Appeals affirmed Mr. Young's conviction and sentence. See United

States v. Young, 339 Fed. Appx. 153 (3d Cir. 2009). He has filed a timely *pro se* motion

to vacate, set aside, or correct his conviction and sentence pursuant to 28 U.S.C. § 2255.

The government filed its response. For the reasons that follow, I will deny the motion in

its entirety without a hearing.

### I.    BACKGROUND

On February 2, 2005, a federal grand jury returned a thirty-five count indictment

charging Mr. Young and his son, Teddy Young, along with seventeen others, with a variety

of drug-related crimes. See Document #1. Those charges included conspiracy to

distribute one kilogram or more of heroin and to distribute heroin within 1000 feet of a

school; possession of one hundred grams or more of heroin with intent to distribute;

possession and distribution of heroin; establishment of drug manufacturing operation; and

use of communication devices to further drug activity.  Teddy Young was also charged

with the use and carrying of a firearm during a drug trafficking crime.  The senior Young

was specifically charged with three counts: conspiracy to distribute more than one

kilogram of heroin and to distribute heroin within 1000 feet of a school in violation of 21

U.S.C. § 846; use of a communication device to further drug trafficking in violation of 21

U.S.C. § 843(b); and possession with intent to distribute heroin in violation of 21 U.S.C. §

841(a)(1), (b)(1)(C).

One of the co-defendants died before the return of the indictment.  Fifteen of the

co-defendants pleaded guilty before trial.  The remaining three, including Mr. Young,

proceeded to trial.  At trial, the government proved by overwhelming evidence that from

November 2000 to June 2002, the defendant and his son were the leaders of a large heroin

distribution organization known as the Young Heroin Organization.  It also proved that

the organization received bulk heroin from several sources including New York City, and

cut, processed, packaged, and stamped the heroin into "bundles" for resale in the streets of

Philadelphia.  Once bundled, the organization's leaders delivered or had the bundles

delivered to the various resellers around Philadelphia and its environs, who then sold the

bundled heroin in the streets.  In addition to the father and son, the organization consisted

of cut house workers, street resellers, and suppliers.  The senior Young distributed much

of his portion of heroin outside of Philadelphia in the Coatesville area.  Evidence at trial

established that the organization distributed at least 24.9 kilograms of heroin during the

period of the charged conspiracy.

On May 2, 2007, after a month-long jury trial, Mr. Young was convicted of all three counts charged against him in the indictment.  See Document #520.  In anticipation of sentencing, the Probation Office prepared a pre-sentencing report which calculated Mr. Young's offense level at 40 and his criminal history level at 1.  Those levels yielded a sentencing guideline range of 292 to 365 months' incarceration.  There was no basis in the record for a downward departure from the guideline range.  On December 6, 2007, however, Mr. Young was sentenced to 144 months' imprisonment, ten years of supervised release, and a special assessment of $300, a significant downward variance from the guideline range due to his advanced age and poor health.  See Document #681.

In his motion, Mr. Young alleges four claims of ineffective assistance of counsel. He first claims that counsel's performance was deficient for failing to file a pretrial motion to dismiss the indictment for violation of the Speedy Trial Act, 18 U.S.C. § 3161.  Second, he alleges ineffectiveness of counsel for failing to file a motion to dismiss based on a constitutional violation of speedy trial under the principals set forth in Barker v. Wingo, 407 U.S. 514 (1972).  Mr. Young next alleges that counsel was ineffective during voir dire by leaving the defendant in the hallway during jury selection.  Finally, Mr. Young alleges that counsel was ineffective during trial by failing to object during the government's opening statement, by denying him his right to testify, and by the cumulative effect of those acts and omissions.

## II.   STANDARD OF REVIEW

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255

challenging the validity of his sentence. Section 2255 provides, in relevant part, as

follows:

> A prisoner in custody under sentence of a court established by Act of
> Congress claiming the right to be released upon the ground that the
> sentence was imposed in violation of the Constitution or laws of the
> United States, or that the court was without jurisdiction to impose
> such sentence, or that the sentence was in excess of the maximum
> authorized by law, or is otherwise subject to collateral attack, may
> move the court which imposed the sentence to vacate, set aside or
> correct the sentence.

28 U.S.C. § 2255(a). Thus, Mr. Young is entitled to relief only if he can demonstrate that

he is in custody in violation of federal law or the Constitution. See United States v. Garth,

188 F.3d 99, 108 (3d Cir. 1999) (citing Herrera v. Collins, 506 U.S. 390, 404 (1993))

(federal *habeas* courts sit to ensure that individuals are not imprisoned in violation of the

Constitution, not to review questions of guilt or innocence.) In considering this motion,

the court "must accept the truth of the movant's factual allegations unless they are clearly

frivolous on the basis of the existing record." United States v. Booth, 432 F.3d 542, 545

(3d Cir. 2005).

Mr. Young has filed this motion *pro se*. *Pro se* pleadings are traditionally

construed quite liberally. However, a *pro se* petitioner is not excused from the duty to

prove a "set of facts in support of his claim which would entitle him to relief." Haines v.

Kerner, 404 U.S. 519, 521 (1972). A prisoner in custody may move the sentencing court

to "vacate, set aside, or correct" a sentence imposed "in violation of the Constitution or

laws of the United States." 28 U.S.C. § 2255. Section 2255 permits *habeas* relief for an

-4-

error of law or fact constituting a "fundamental defect which inherently results in a complete miscarriage of justice." United States v. Eakman, 378 F.3d 294, 298 (3d Cir. 2004) (citing United States v. Addonizio, 442 U.S. 178, 184 (1979)).

Section 2255 provides that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). Conversely, a court may dismiss a Section 2255 motion where the records and files show conclusively that the movant is not entitled to relief. United States v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994).

"*Habeas* review is an extraordinary remedy and will not be allowed to do service for an appeal." Bousley v. United States, 523 U.S. 614, 621 (1998). Therefore, a *habeas* petitioner is procedurally barred from asserting a claim in a § 2255 petition that he could have, but failed to raise in his direct appeal. See United States v. Frady, 456 U.S. 152, 165, (1982). Once claims have been procedurally defaulted, the petitioner can only overcome the procedural bar by showing "cause" for the default and "actual prejudice" from the alleged error or that he is "actually innocent." Id. at 167. "In this context, 'cause' consists of 'something external to the petitioner, something that cannot be fairly attributable to him,' and 'prejudice' means that the alleged error 'worked to [the petitioner's] actual and substantial disadvantage.'" United States v. Rodriguez, 153 F. Supp. 2d 590, 594 (E.D. Pa. 2001) (citing Coleman v. Thompson, 501 U.S. 722, 753 (1991) and United States v. Frady, 456 U.S. 152, 170 (1982)).

Importantly, however, a defendant need not demonstrate cause and prejudice when he raises a claim of ineffective assistance of counsel. See United States v. DeRewal, 10 F.3d 100, 104 (3d Cir.1993). Ineffective assistance of counsel claims are generally not considered on direct appeal and are best brought by the defendant in a collateral attack such as this. United States v. Thornton, 327 F.3d 268, 272 (3d Cir. 2003). Therefore, claims properly dismissed as procedurally defaulted because they were not raised on direct appeal are appropriately considered in connection with an ineffective assistance of counsel claim. See DeRewal, 10 F.3d at 104-105.

## III.  DISCUSSION

A defendant seeking relief under § 2255 on an ineffective assistance of counsel claim must show that: (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms; and (2) the defendant suffered prejudice as a result -- meaning, but for counsel's deficient performance, the result of the proceeding would have been different, i.e., the deficiency deprived the defendant of a trial whose result is reliable. Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996) (citing Strickland v. Washington, 466 U.S. 668, 694 (1984)). Because a § 2255 petitioner cannot prevail unless he satisfies both prongs of the Strickland test, the Third Circuit Court of Appeals has recognized that it is often appropriate for a reviewing court to consider the second part of the test, the prejudice to the defendant based on the "assumed deficient conduct of counsel," first. If the petitioner has not shown that he would have been better off if the alleged errors had not been made, it is unnecessary to consider whether his

counsel's performance was actually deficient. See McAleese v. Mazurkiewicz, 1 F.3d

159, 170 (3d Cir. 1993). In Strickland, the Supreme Court advised:

> A court need not determine whether counsel's performance was
> deficient before examining the prejudice suffered by the
> defendant as a result of the alleged deficiencies. The object of
> an ineffectiveness claim is not to grade counsel's performance.
> If it is easier to dispose of an ineffectiveness claim on the
> ground of lack of sufficient prejudice, which we expect will
> often be so, that course should be followed. Courts should
> strive to ensure that ineffectiveness claims not become so
> burdensome to defense counsel that the entire criminal justice
> system suffers as a result.

Strickland, 466 U.S. at 697.

A court reviewing a claim of ineffective assistance "must indulge a strong

presumption that counsel's conduct falls within the wide range of reasonable professional

assistance; that is, the defendant must overcome the presumption that, under all the

circumstances, the challenged action might be considered sound trial strategy." Sistrunk,

96 F.3d at 670 (citing Strickland, 466 U.S. at 689-690). The Third Circuit has set forth the

approach district courts must adopt in determining whether a Section 2255 petitioner is

entitled to a hearing on his ineffective assistance of counsel claims:

> First, we must determine whether the district court considered as true
> all appellant's nonfrivolous factual claims. This step requires that we
> review whether the district court properly found certain allegations
> frivolous. Second, we must determine whether, on the existing record,
> those claims that are nonfrivolous conclusively fail to show
> ineffective assistance of counsel. To evaluate claims under this
> second step, we must turn to both prongs of the Strickland test. If a
> nonfrivolous claim clearly fails to demonstrate either deficiency of
> counsel's performance or prejudice to the defendant, then the claim
> does not merit a hearing. If on the other hand, a claim, when taken as
> true and evaluated in light of the existing record, states a colorable

> claim for relief under Strickland, then further factual development in
> the form of a hearing is required. That is, if a nonfrivolous claim
> does not *conclusively* fail either prong of the Strickland test, then a
> hearing must be held.

United States v. Dawson, 857 F.2d 923, 927-28 (3d Cir. 1988) (emphasis in original).

## A.      Failure to File a Motion to Dismiss for Speedy Trial Violation

The Sixth Amendment of the United States Constitution provides that "[i]n all

criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."

U.S. Const. amend. VI.   The Sixth Amendment right to a speedy trial is designed to protect

an individual from the deprivation of his personal liberty from the time he is arrested or

criminally charged through to sentencing.   Washington v. Sobina, 475 F.3d 162, 165 (3d

Cir. 2007).   Congress enacted the Speedy Trial Act to give effect to the Sixth Amendment

right to a speedy trial by setting specified time limits after arraignment or indictment within

which criminal trials must be commenced.   United States v. Rivera Constr. Co., 863 F.2d

293, 295 (3d Cir. 1988).   The Speedy Trial Act provides that "the trial of a defendant . . .

shall commence within seventy days from the filing date (and making public) of the

information or indictment, or from the date the defendant has appeared before a judicial

officer of the court in which such charge is pending, whichever date last occurs."   18 U.S.C.

§ 3161(c)(1);   see also Zedner v. United States, 547 U.S. 489, 497 (2006).   These

protections offered by the Speedy Trial Act "exceed those of the Sixth Amendment, which

does not require that a trial commence within a specified time."   United States v. Lattany,

982 F.2d 866, 870 n.5 (3d Cir. 1992).

Here, Mr. Young argues that the Speedy Trial Act's deadline was not met by a substantial margin, and his attorney's decision not to file a motion to dismiss for this violation is but one of many examples of the inadequate legal representation that permeated his prosecution. Without providing the details of his calculation, Mr. Young estimates that of the 765 days between the return of the indictment and his trial date, there were only 319 days of excludable time, thereby leaving 446 days subject to Speedy Trial limitations. This result is incorrect and not supported by the record.

In calculating the seventy-day period, Section 3161(h) of the Act requires the district court to exclude certain periods of delay. The district court shall exclude "[a]ny period of delay resulting from other proceedings concerning the defendant," including, but not limited to, arraignments, pretrial conferences, bail hearings, and the like. See United States v. Garrett, 729 F.2d 705, 709-710 (D.C. Cir. 1983) ("Congress articulated its intent that the 'other proceedings' language be read broadly"). Section 3161(h)(1)(F) of the Act provides that "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," may be excluded from the speedy trial calculation. In addition, a district court may "toll" the Speedy Trial Act clock by ordering a continuance, if such continuance serves "the ends of justice." 18 U.S.C. § 3161(h)(8). The district court's reasoning must be set forth "in the record of the case, either orally or in writing." Id. These on-the-record findings must indicate that the district court weighed the need for a continuance against the countervailing public interest in a speedy trial. See Zedner, 547 U.S. at 506-507. If the seventy days are exceeded,

-9-

however, dismissal of the indictment is mandatory, 18 U.S.C. § 3162(a)(2), but such dismissal may be with or without prejudice. Id.

The indictment that charged Mr. Young was returned on February 2, 2005. See Document #1. He was arrested, had his initial appearance before a Magistrate Judge, and was appointed CJA counsel on February 4, 2005. See Document #47. He was arraigned on February 15, 2005. See Document #95. On February 17, 2005, Mr. Young was released on bail pending trial, and placed on 24-hour electronic monitoring. See Document #128.

The indictment charged eighteen other defendants and was based on over 20,000 intercepted telephone calls and other voluminous discovery. Thus, on March 21, 2005, I granted the government's *unopposed* motion to declare the case complex, which permitted the case to be tried beyond the limitations set by the Speedy Trial Act on the grounds that the ends of justice served by the continuance outweighed the best interest of the public and the defendants in a speedy trial. See Document #190. By not opposing this finding, Mr. Young agreed that the case could not be tried within seventy days. In fact, granting such delays has long been recognized as the proper exercise of discretion by the trial court. Doggett v. United States, 505 U.S. 647, 656 (1992). Thus, because only forty-seven days passed between Mr. Young's arrest and the declaration of the case as complex, there can be no violation of the Speedy Trial Act. The record, however, establishes that even less time is attributable to speedy trial calculation.

Over a month before the case was designated complex, co-defendant David Lee filed two pretrial motions. See Documents #87 and 88. I entered the first Order for speedy trial delay on February 15, 2005. See Document #89. From the filing of those first two pretrial motions, there was an unbroken line of pretrial motions filed until the date of trial on April 9, 2007. Those motions included suppression motions, motions for extensions of time to file motions, motions to continue trial, numerous discovery motions, withdrawals and additions of counsel for various defendants, status conferences, and several pretrial hearings. On March 21, 2005, I granted Mr. Young's "motion for joinder in co-defendants' motions," see document #148, where he sought to obtain whatever "meritorious relief" would be afforded his co-defendants as a result of any of their pretrial motions. See Document #195. Any pretrial motion filed by any defendant tolls the speedy trial clock for all of his co-defendants. See 18 U.S.C. §§ 3161(h)(1)(D) and 3161(h)(6); see also United States v. Erby, 419 Fed. Appx. 176, 179 (3d Cir. 2011) (citing United States v. Novak, 715 F.2d 810, 815 (3d Cir. 1983)). Thus, not a single day of speedy trial time passed from February 14, 2005, the date of the first pretrial motion, to April 9, 2007, the date of trial, due to pretrial motions, status conferences, and defendant motions to continue trial.

Given the sensitive nature of the prosecution, the amount of defendants charged, the number of attorneys involved, and the nature and quantity of the evidence, including over 20,000 intercepted conversations and voluminous discovery, it was unreasonable to expect adequate preparations for pretrial proceedings and for trial itself within the time limits established by the Speedy Trial Act. Thus, the ends of justice served by granting the

-11-

government's motion for a continuance outweighed the best interest of the public and the
defendants in a speedy trial.   See United States v. Brooks, 697 F.2d 517, 522 (3d Cir. 1982)
(noting that inquiry is limited to question of whether district court abused discretion in
granting continuance).

Furthermore, that Mr. Young did not explicitly consent to any continuances is of no
import here, contrary to his assertion.   Mr. Young filed six pretrial motions, with one of
those motions requesting an extension of time to court-ordered filing deadlines.   His request
to join in all of his co-defendants' pretrial motions was also granted.   Moreover, it is within
counsel's purview to determine whether a continuance is in the best interest of his client.
The statute explicitly allows for a continuance "at the request of the defendant *or* his
counsel."   18 U.S.C. § 3161(h)(7)(A); see also United States v. Mayfield, 361 Fed. Appx.
425, 428 (3d Cir. 2010); United States v. Fields, 39 F.3d 439, 443 (3d Cir. 1994) (noting that
arguments for dismissal based on continuances that defendant's own attorney sought are
disturbing).   Thus, Mr. Young's disagreement with his case's continuances is not
dispositive.

In conclusion, only ten days are subject to the speedy trial clock, i.e., from the
defendant's arrest on February 4, 2005, to the filing of the first pretrial motion on February
14, 2005.   Mr. Young has established neither prejudice from this delay nor a Speedy Trial
Act violation.   Accordingly, his claim that counsel was ineffective for failing to file a
meritless motion to dismiss must fail.

-12-

**B.     Failure to File a Motion to Dismiss for Lack of Speedy Trial
under the Principles of Barker v. Wingo**

Mr. Young next argues that counsel was ineffective for not filing a motion to dismiss

based on an alleged speedy trial violation pursuant to the principles of Barker v. Wingo.   In

Barker v. Wingo, 407 U.S. 514 (1972), the Supreme Court of the United States established a

balancing test to determine whether an accused's Sixth Amendment speedy trial rights have

been violated.   Courts must weigh the "[l]ength of delay, the reason for the delay, the

defendant's assertion of his right, and prejudice to the defendant."   Id. at 530.   Embodying

this Sixth Amendment right, the Speedy Trial Act requires that a defendant be brought to

trial within seventy days from his initial appearance.   See 18 U.S.C. § 3161(c).   If the trial

does not commence within seventy days, the Act requires the indictment to be dismissed.

See 18 U.S.C. § 3162(a)(2).

As noted by the Court of Appeals for the Third Circuit, "[t]he length of the delay

figures into the speedy trial analysis twice.   First, it is used to determine whether Barker is

triggered at all.   Hakeem v. Beyer, 990 F.2d 750, 759-760 (3d Cir. 1993).   If the delay is

long enough to trigger Barker, it is then analyzed as 'one factor among several,' and courts

should measure the 'extent to which the delay stretches beyond the bare minimum needed to

trigger judicial examination of the claim.'"   Conroy v. Leone, 316 Fed. Appx. 140, 143 (3d

Cir. 2009) (citing Doggett, 505 U.S. at 652).

The first factor, "length of the delay," is a triggering mechanism:

> Simply to trigger a speedy trial analysis, an accused must
> allege that the interval between accusation and trial has crossed
> the threshold dividing ordinary from "presumptively

-13-

> prejudicial" delay, since, by definition, he cannot complain
> that the government has denied him a "speedy" trial if it has, in
> fact, prosecuted his case with customary promptness.

Doggett v. United States, 505 U.S. 647, 651-652 (1992).   "Presumptive prejudice" when

used in this context simply "marks the point at which courts deem the delay unreasonable

enough to trigger the Barker enquiry."   Id. at 652, n.1.   The "presumptively prejudicial"

delay point is generally found as it approaches one year.   Id.

        In this case, the indictment was returned on February 2, 2005.   Mr. Young was

arrested and had his initial appearance on February 4, 2005.   Jury selection and trial

commenced on April 9, 2007.   The twenty-six month period of delay from the filing of the

indictment to the beginning of the trial is sufficient to trigger an analysis of the Barker

factors.

             1.      First Factor – Length of Delay

        First, with respect to length of the delay, the Supreme Court has recognized that "the

delay that can be tolerated for an ordinary street crime is considerably less than for a serious,

complex conspiracy charge."   Barker, 407 U.S. at 531.   In this case, Mr. Young and his

seventeen living co-defendants were charged in a complex heroin distribution conspiracy

case involving firearms.   The government provided voluminous discovery involving twenty

thousand recorded conversations, which had been transcribed for the defendants and their

counsel to review.   In addition, the defendants filed over sixty pretrial motions.   In a

scenario such as this, a twenty-six month delay from the filing of the charges against Mr.

Young until the trial date is not excessive in light of the complex nature of this

-14-

multi-defendant case.   See Hakeem v. Beyer, 990 F.2d 750 (3d Cir. 1993) (pretrial

incarceration of 14 ½ months does not demonstrate *per se* oppressive pretrial delay);

Government of Virgin Islands v. Pemberton, 813 F.2d 626 (3d Cir. 1987) (delay of 16

months did not violate Sixth Amendment right to speedy trial); United States v. King, 483

F.3d 969, 976 (9th Cir. 2007) (delay of nearly two years was not excessive in extraordinarily

complex case); United States v. Bass, 460 F.3d 830, 837 (6th Cir. 2006) (delay of five years

did not violate the defendant's Sixth Amendment speedy trial right where case was complex

and involved 17 defendants).   Furthermore, the Third Circuit Court of Appeals noted that

"the seriousness of a post-accusation delay varies depending on the circumstances, and a

waiting period during which the defendant is not detained presents fewer concerns than a

wait accompanied by pretrial incarceration."   United States v. Dent, 149 F.3d 180, 184 (3d

Cir. 1998).   Approximately a week after his arraignment in February 2005, Mr. Young was

released on bail from pretrial detention until his conviction.   Thus, this factor does not

weigh in favor of finding a violation of Mr. Young's speedy trial rights.

### 2.   Second Factor – Reason for Delay

The next factor, "reason for the delay," also weighs against finding a Sixth

Amendment violation.   The charges in this case were complex and involved multiple

defendants with voluminous discovery.   Plea negotiations resulted in fifteen of the

defendants entering pleas of guilty.   Pretrial motions, joined by Mr. Young, required

hearings, findings of fact, and memoranda.   It was reasonable to conclude that this case

required significant preparation by counsel to represent effectively any defendant who

proceeded to trial.  The charges in this case were serious and carried significant penalties.
It was crucial that the defendants had adequate time to prepare a proper defense.  Thus, the
reason for the delay in this complex, multi-defendant case was more than justified, and
weighs against finding a violation of Mr. Young's constitutional right to a speedy trial.

      3.     Third Factor – Defendant's Assertion of His Right

      The third factor to consider is whether the defendant asserted his right to a speedy
trial.  Nothing in the record supports a finding that Mr. Young asserted his right to a speedy
trial.  Neither he nor his co-defendants objected to any continuance of trial or to any
co-defendant's pretrial motion.  Instead, Mr. Young joined his co-defendants' pretrial
motions and thus became subject to their ensuing delays.  This factor also weighs against a
finding of a speedy trial violation.

      4.     Fourth Factor – Prejudice to the Defendant

      The final Barker factor is prejudice to the defendant.  There are three types of
prejudice that can result from a pretrial delay: (1) oppressive pretrial incarceration; (2) the
accused's anxiety and concern over the outcome of the litigation; and (3) impairment of the
defense.  Barker, 407 U.S. at 532.  Of these, the most serious is the last, because the
inability of a defendant adequately to prepare his case skews the fairness of the entire system.
Id.  "With respect to all its various types, the burden of showing prejudice lies with the
individual claiming the violation...."  Hakeem, 990 F.2d at 760.

      Mr. Young has not demonstrated any prejudice as a result of the delay.  First, Mr.
Young was not incarcerated pending trial.  He was released on bail on February 17, 2005,

-16-

and remained so until his conviction, subject to electronic monitoring at the home of his daughter.   On August 9, 2006, his conditions of release were further modified for health reasons to include permission to take a one-hour walk each day.   See Document #379. Second, while Mr. Young contends that he was in poor health during the twenty-six month delay, there is nothing to show that the delay was responsible for his advanced age and poor health.   Mr. Young attached the un-notarized "Affirmation of Gamela Young" as an exhibit to his § 2255 motion.   Miss Young is Mr. Young's daughter, and submits that her father had been suffering from severe asthma for many years which caused his early retirement in 1996. See Exhibit 2.   He had been receiving disability and social security benefits as a result of his medical condition.   Id.   Miss Young also noticed that Mr. Young's asthma worsened, and she became concerned about his emotional status during the pretrial period.   Id.   While Mr. Young suffered from asthma and other health problems prior to his indictment, there is no proof that the progression of his infirmities can be attributed to the delay in trial.

Finally, Mr. Young cannot attribute the delay to impairing his defense.   He attempts to do so, however, mentioning the death, disappearance, or faulty memory of defense witnesses as possible prejudice.   He fails to identify prejudice with respect to a single defense witness, let alone one who died, disappeared, or forgot relevant facts in his case. Mr. Young identified Marlon Gocking as an important witness for his defense who was deported in 2006 by the government.   He points to no exculpatory evidence that Mr. Gocking could have provided.   The Third Circuit has held that when a petitioner fails "to set forth facts to support his contention" an evidentiary hearing is not required.   Zettlemoyer v.

-17-

Fulcomer, 923 F.2d 284, 298, 300-301 (3d Cir. 1991).   In fact, Mr. Gocking was a
confidential informant who obtained a consensually recorded conversation with Teddy
Young.   That recording was admitted into evidence as Teddy Young's statement against his
own interest, not for the truth of what Mr. Gocking stated.   Mr. Young was not a party to
that conversation and he provided no proffer as to how Mr. Gocking could have been a
defense witness on his behalf.   See Campbell v. Burris, 515 F.3d 172, 184 (3d Cir. 2008)
(where petitioner fails to allege what a witness would have been able to say that would have
been of help to him, an evidentiary hearing is not mandated).

     Mr. Young also identifies Frank Robinson, a co-defendant, who died prior to
indictment.   Mr. Robinson was known throughout the investigation as the "tester" of the
heroin for the organization.   Being a co-defendant, Mr. Robinson could not have been a
defense witness for Mr. Young.   Mr. Young does not proffer what exculpatory evidence Mr.
Robinson could have provided if not for the delay.   As an exhibit to his § 2255 motion,
however, Mr. Young attached the un-notarized "Proffered Testimony of Theodore Young,
Sr., in Support of his Motion pursuant to 28 U.S.C. § 2255."   See Exhibit 1.   Mr. Young
indicates that if he would have been permitted to testify, he would have told the jury that it
was Mr. Robinson who first told him that Mr. Young's two housemates "were hanging out
with a 'wrong crowd,' that they were heavily involved with drugs, and that I should be very
careful for letting them stay in my house."   Id.   Mr. Young adds that he asked the
gentlemen to leave based on Mr. Robinson's recommendation, and that caused hard feelings
which prompted the two co-defendants to testify falsely against him.   Id.   Mr. Young's

-18-

statements of prejudice are conclusory and without merit.

On balance, I conclude that the Barker factors do not demonstrate a violation of Mr.
Young's Sixth Amendment right to a speedy trial.   Accordingly, a claim of ineffectiveness
of counsel for failing to file a meritless motion to dismiss based on a speedy trial violation
must also fail.

## C.  During Voir Dire

Mr. Young next argues that his attorney was constitutionally ineffective during *voir
dire* when the attorney refused to allow Mr. Young inside the courtroom during jury
selection.   His attorney allegedly told him that jury selection was just a formality, and that
there was no need for Mr. Young to attend.   The attorney further allegedly told Mr. Young
that he would have to be in the courthouse in case the trial began immediately following *voir
dire*.   These statements are belied by the record.

First, I assume that Mr. Young is referring to not being present in the Ceremonial
Courtroom at the drawing of jury panel members on the morning of April 9, 2007.   While it
was his right to attend that proceeding, most defendants waive that right in this district, as did
Mr. Young.   Mr. Young signed a "Waiver of Presence of Court Stenographer or Electronic
Sound Recording Operator and Defendants at Drawing of Jury Panel Members in Criminal
Trials."   This document was filed with the Clerk of Court on April 10, 2007.   See
Document #487.   Counsel for the three remaining defendants, however, were present at the
drawing of jury panel members.

-19-

Second, if Mr. Young is referring to not being present in the courtroom during Jury Selection, he is mistaken. Not only do I remember his presence during *voir dire*, but the transcript of that proceeding confirms his presence. See N.T. 4/09/07. Mr. Young's complaint of the lack of a record of his attorney exercising peremptory strikes is also baseless. Rule 24(b)(2) of the Federal Rules of Criminal Procedure provides that the government and the defense are given a set amount of peremptory strikes after those panel members with extraordinary hardships are excused for cause. The government receives six peremptory challenges in choosing regular jurors, and two additional strikes for four alternates. The three defendants received a total of ten peremptory challenges in choosing regular jurors, and two additional strikes for four alternates. See FED.R.CRIM.P. 24(c)(4). Counsel exercised those strikes in an orderly fashion until the strikes were exhausted and the jury was chosen. Counsel for the three defendants made their selections as a group and there is never a record of an individual attorney's selection. His claim that his attorney was ineffective for failing to exercise peremptory challenges is meritless.

Accordingly, Mr. Young has failed to demonstrate that counsel was ineffective during the *voir dire* proceedings in this case.

## D. During Trial

### 1. Failure to Object to Government's Opening Statement

Next, Mr. Young complains that the government's opening statement to the jury was fabricated in that there were no intercepted conversations in which the defendant explicitly used the term "organization" or "cut house workers" or "heroin-cutting process." Mr. Young quotes

-20-

the following paragraph from the government's opening which stands out to him as

exceptionally troubling:

> You are going to hear Theodore Young, Sr. and Teddy
> discussing aspects of their organization. You are going to
> hear Theodore Young, Sr. complaining about the cut
> house workers, they were Scott brothers. You are going to
> hear Theodore Young, Sr. urging Teddy Young to get on
> top of the cut house workers, to get them working earlier,
> to get them working faster because you need to put
> massive amounts of heroin.

See N.T. 4/10/07 at 121-122.   Mr. Young also complains that the government told the jury that

he was observed attempting to dispose of bundles of heroin during the search of his home.   He

argues that his attorney's failure to object to these allegations supports his claim of

ineffectiveness of counsel.

An opening statement presented to a jury is limited in scope to a general statement of

facts which are intended or expected to be proved and is designed to generally outline or

foreshadow the testimony that follows.   United States v. DeRosa, 548 F.2d 464, 470-471 (3d

Cir. 1977).   Thus, the government's opening statement is an overview of what the evidence will

show.   Even before opening statements began, however, I instructed the jury that opening

statements were not evidence, and were not to be considered by them as such:

> First, the government's attorney will make an opening
> statement outlining the government's case. Immediately
> thereafter, defense counsel may make an opening
> statement outlining the defense, or the statement may be
> deferred by the defendant until later in this case.
>
> The opening statements are not evidence. They are not
> argument to you about what you should do in this case.
> They are simply outlines of what you can expect to see
> during the course of trial.

See N.T. 07/10/07 at 99.   After some further preliminary instructions to the jury, the

government began its opening statement.   As predicted in its opening statement, the

government produced at trial evidence of eight members of the Young Heroin Organization who

established that it was a drug organization, and that they used a cut house.   These witnesses also

explained the heroin-cutting process.   In Exhibit 1 of his motion, Mr. Young explains that he

would have testified to the jury that during the search of his residence, when he was throwing the

bundles of heroin out of the window, he

> "acted irrationally and out of fear but not because I was guilty of
> illegal possession of the drugs. I would testify that, although there
> was no justification for my actions, I would explain that, in the
> past, in the spring of 1985, I was at my brother Harold's house on
> Osage Avenue in West Philadelphia when the police bombed the
> residence of the group known as 'MOVE' and incinerated the
> whole block, including my brother's house. I would testify that I
> do not trust police and my horrific experience stands in my
> memory quite vividly."

See Exhibit 1 at 6.   Whatever explanation Mr. Young could have given for throwing the bundles

of heroin out of the window, the fact remains that he was disposing of them during the lawful

search of his residence.   The jury was provided all of the relevant facts of the investigation, the

jury made credibility determinations where necessary, and ultimately the jury found Mr. Young

guilty of all three counts charged against him.   Accordingly, I find that there was nothing

objectionable about the government's opening statement to the jury, and counsel for Mr. Young

could not have been ineffective for failing to object.

### 2.  Denial of Right to Testify

Next, Mr. Young argues that his attorney was constitutionally ineffective because he

-22-

instructed Mr. Young not to testify and did not call him to testify in his own defense.   Mr.

Young had no reason to distrust his attorney because Mr. Young had "had no prior criminal

or civil trial experience to know on [his] own about [his] right to testify."   See Exhibit 1.

Mr. Young contends that he was not aware of this fundamental right to testify, or he would

have testified on his own behalf.   Id.

 A defendant has a constitutional right to testify in his own defense, which cannot be

taken away by counsel.   See Rock v. Arkansas, 483 U.S. 44, 51 (1987); United States v.

Batista, 483 F.3d 193, 197 (3d Cir. 2007).   When a *habeas* petitioner claims his counsel was

ineffective by denying his right to testify, the two-part Strickland test applies.   Palmer v.

Hendricks, 592 F.3d 386, 394 (3d Cir. 2010).   Before determining whether Mr. Young's

trial counsel's performance was deficient, I will determine whether Mr. Young has shown

that he was prejudiced by not being able to testify on his own behalf.   See Strickland, 466

U.S. at 697 (a court need not determine whether counsel's performance was deficient before

examining the prejudice suffered).

 Mr. Young argues that, if permitted to testify, he would have told the jury that three

of the co-defendants who testified against him, i.e., Mark Hightower, Steven Scott, and

Ronnell Scott, did so falsely because they were holding a "grudge" against him for

throwing them out of his "house where they had lived rent-free for many years."   See

Exhibit 1.   Mr. Young would have also told the jury that his own grandson and

co-defendant, Rafiq Young, testified falsely against Mr. Young because Mr. Young caught

Rafiq stealing money from Mr. Young who then cut Rafiq out of his life.   This allegedly

-23-

angered Rafiq who also began to hold a "grudge" against Mr. Young, prompting Rafiq to testify against Mr. Young. Id.

None of this proposed testimony is sufficient to establish prejudice, that is, that the alleged errors were "sufficiently serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. The jury heard over 150 recorded telephone conversations introduced by the government. At least twenty of those conversations involved Mr. Young in which he discussed aspects of the heroin business with his son, Teddy. Eight of his co-conspirators testified at trial and all of them implicated Mr. Young. Bundles of heroin, measuring cups, spoons, packaging materials, rubber bands, nose masks, stamping kits, and items with heroin residue were recovered from, *inter alia*, Mr. Young's residence at 7519 Woolston Street, Philadelphia. The search of his residence also recovered firearms. Law enforcement agents observed Mr. Young throwing bundles of a substance out of the window which tested positive for heroin. If Mr. Young had testified at trial, nothing he could have said would have overcome the overwhelming evidence against him. The record defeats his claim that his testimony would have made any difference. Any proposed testimony would not have been sufficient to show "that the decision reached would reasonably likely have been different absent the errors. Strickland, 466 U.S. at 696. Thus, Mr. Young has failed to demonstrate that he was prejudiced by his inability to testify. He has not shown that there was a reasonable probability that the jury would have accepted his defense that his co-conspirators were holding a grudge against him and therefore testified falsely against him.

-24-

Because Mr. Young failed to show prejudice, there is no need for this court to order an evidentiary hearing regarding whether Mr. Young's counsel prevented him from testifying. Such bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing on a *habeas* petition. See Campbell v. Burress, 515 F.3d 172, 184 (3d Cir. 2008). Moreover, there is no evidence in the record to corroborate Mr. Young's claim that he was denied the right to testify. Mr. Young did not at any time tell the court he desired to testify or that his attorney was actively preventing him from testifying, and he did not testify at trial. A defendant's "bare bones assertion" that he was denied his right to testify is insufficient to require a hearing. Underwood v. Clark, 939 F.2d 473, 476 (7th Cir. 1991); see also D'Amario v. United States, 403 F. Supp. 2d 361, 371 (D.N.J. 2005) (same). More specific evidence is required. Underwood, 939 F.2d at 476 (noting "some substantiation [of the defendant's claim] is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify").

### 3. Cumulative Effect of Counsel's Acts and Omissions

Finally, Mr. Young argues that each of these errors committed by his attorney during trial, viewed in isolation, was sufficiently prejudicial to warrant relief under Strickland However, the law requires, he insists, that the court consider the cumulative effect of all those errors. See Beryman v. Morton, 100 F.3d 1089, 1097-1102 (3d Cir. 1996).

There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689. Mr. Young's attorney cannot be held to be ineffective for having failed to raise meritless claims. Further, as the

-25-

Supreme Court of the United States has held, "judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence." Id. at 689. Because I have found no deficiencies in the performance of Mr. Young's attorney, there can be no cumulative ineffectiveness as Mr. Young suggests. Accordingly, I will deny Mr. Young's motion to vacate, set aside, or correct his conviction and sentence brought pursuant to 28 U.S.C. § 2255.

An appropriate Order follows.